UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                                            Chapter 11

2128 FLATBUSH AVE LLC,                      Case No.: 23-43371-ess

                                    Debtor.
---------------------------------------------------------X

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION
OF2128 FLATBUSH AVE LLC**


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE
PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY
COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR
APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT.**


**SHAFFERMAN & FELDMAN LLP**
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802
Joel M. Shafferman, Esq.

*Counsel to the Debtor*

Dated: December   , 2023

0

## SUMMARY

2128 Flatbush Ave LLC, the debtor and debtor-in-possession herein (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement"), pursuant to section 1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all known creditors of the Debtor, and other parties in interest, for the purpose of soliciting acceptances of the Chapter 11 Plan of Reorganization (the "Plan")[1] proposed by the Debtor.  The Plan has been filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") and a copy of the same accompanies the Disclosure Statement.

**The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy estate and the anticipated recovery by Creditors of the Debtor.**

A finding by the Bankruptcy Court that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code does not mean, indicate or imply in any manner that the Bankruptcy Court recommends either an acceptance or a rejection of the Plan by a party eligible to vote thereon.

A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.

In the opinion of the Debtor, the treatment of Claims under the Plan provides a greater recovery for Creditors than that which is likely to be achieved under alternative reorganization plans or the liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

**Accordingly, the Debtor believes that Confirmation of the Plan is in the best interests of Creditors and recommends that you not object to the Plan.**

## BACKGROUND ABOUT THE
## DEBTOR AND THIS CHAPTER 11 CASE

On August 12, 2016, the Debtor acquired the real property known as and located at 99-18 Rockaway Beach Boulevard, Rockaway Park, New York 11694, designated as Block 16155, Lot 5 (the "Property") by deed which was recorded and filed with the Office of the City Register of the City of New York on August 24, 2016 (City Register File No. 20160000291963) (the "Deed")[2]. At the time that it acquired these two properties, the

---

[1]  In the event there is any inconsistency between the Disclosure Statement and Plan, the terms of the Plan shall supersede the Disclosure Statement.

[2] At the same time that the Debtor acquired the Property, it also acquired the neighboring real property known as and located at 99-20 Rockaway Beach Boulevard, Rockaway Park, New York 11694. The issues raised in the adversary proceeding do not impact this other parcel.

1

Debtor intended to develop the two properties together, as the sum of value of the two properties together is greater than the value of each of the parcels separately.

On or around September 25, 2020, the NYCTL Defendants commenced an action entitled NYCTL 2019-A Trust, and the Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 2019-A Trust -against- 2128 Flatbush Ave LLC, New York State, Department of Taxation and Finance, and New York City Department of Finance, with the Supreme Court of the State of New York, Queens County (Index No. 716909/2020) (the "State Court Action") seeking the foreclosure of a tax lien on the Property by serving the Debtor through the Secretary of State.

According to Michael McMahon, the Debtor's sole member, neither he nor the Debtor ever received notice of a tax lien, nor any other papers filed in the State Court Action. According to the records for service of process upon the Debtor contained on the website of the Secretary of State, mailings made by the Secretary of State were sent to 2137 East 38th Street, Brooklyn, New York 11234 c/o Michael McMahon. 2137 East 38th Street, Brooklyn, New York is the former residence of Michael McMahon. Michael Mahon sold that property twelve (12) years ago, in or around 2011, many years prior to the commencement of the State Court Action. Therefore, neither the Debtor nor Michael McMahon ever received the summons and complaint from the Secretary of State and had no actual notice of the State Court Action.

Additionally, the office of the Debtor that is listed with the Secretary of State is 2128 Flatbush Avenue, Brooklyn, New York 11234. However, the Debtor sold the real property known as and located at 2128 Flatbush Avenue, Brooklyn, New York 11234 in or around 2018. Therefore, the Debtor has not maintained an office at 2128 Flatbush Avenue, Brooklyn, New York 11234 for approximately five (5) years.

On June 22, 2023, the court presiding over the State Court Action issued a judgment of foreclosure of a tax lien, in the amount of $31,730.41, through November 23, 2021, plus costs and reasonable attorney's fees (the "Judgment of Foreclosure"). Unbeknownst to the Debtor and Michael McMahon, an auction of the Property was purportedly held on September 1, 2023 (the "Auction"), at which time the Property was purportedly sold for $510,000 to Badalov.

On Thursday, September 14, 2023, Michael McMahon received a phone call from Badalov or one of his representatives (the "September 14 Phone Call") advising him that Badalov had purchased the Property at the auction. The September 14 Phone Call was the first time that the Debtor and Michael McMahon learned about the tax lien, the State Court Action, and the Auction. Mr. McMahon was later advised that the Debtor had to immediately surrender possession of the Property, and that Mr. McMahon would be arrested if he ever again entered the Property.

It appears from the Referee's Report of Sale in the State Court Action, dated September 20, 2023 and the summary of the title chain to the Property contained on ACRIS that a deed for the Property was never delivered to Rafael Badlov, the purported highest

bidder at the Auction Sale ("Badlov"). Instead, it appears that on September 18, 2023, Badlov assigned his bid to B 100 Mazal LLC ("Mazel"), and that the deed, a copy of which is attached hereto as Exhibit "C", was signed on September 22, 2023 , which was subsequent to the Petition Date. The Deed was recorded in October 19, 2023.

In order to preserve its interest in the Property, on September 20, 2022 ("Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

On October 4, 2023, Debtor commenced this adversary proceeding seeking a judgment: (1) vacating the Judgment of Foreclosure pursuant to CPLR §317; (2) avoiding the Auction Sale as a fraudulent transfer under Bankruptcy Code § 548(a)(1)(B)(i); and (3) declaring that Debtor is in possession of the Property and that the stay pursuant to Section 362(a) of the Bankruptcy Code applies to any transference of the Property, as well as enjoining any disposition of the Property.

If the Debtor is successful in prosecuting the Adversary Proceeding, it Debtor intends to pay 100% of the property tax arrears assessed by New York County and the tax claims purchased by the NYCTL Defendants through the Plan.

## B.    THE PLAN

The means of implementation of the Plan is through the distribution of the Creditors' Fund which is sufficient in amount to all allowed claims of all claims in full, along with interest at the market rate.  Therefore, all creditors are unimpaired under the Plan.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below are the Debtor's best current estimate of the aggregate amount of Allowed Claims in the Case. These estimates are based upon an analysis of the Schedules filed by the Debtor, proofs of Claim filed by Creditors and certain other documents of public record. There can be no assurance that Claims will be Allowed by the Bankruptcy Court in the amounts set forth below. The aggregate amount of Allowed Claims may be significantly lowered from the amounts set forth below as the result of objections to Claims which may be brought, or through stipulations which may be negotiated with various Creditors.

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| **Unclassified** – Approximately $5,000 | Statutory Fees | All fees and charges payable to the U.S. Trustee, including those owed under 28 U.S.C. §1930(a)(6), shall be fully paid.  Such fees and charges that are due on or prior to the Effective Date shall be paid no later than ten (10) days after the Effective Date.

Such fees that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry of a final decree |

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| | | closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed. |
| **Unclassified** – Approximately $25,000 (which is inclusive of final fees and fees held back on account of interim allowances) | Administrative Claims professionals' claims for compensation], Claims for Professional compensation, post-petition ordinary court liabilities, and post-petition tax claims, if any) | Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the date payment of such Claim is due under the terms thereof or applicable law, or (y) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise agreed in writing by the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of his business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. |
| **Unclassified** – Unknown, if any exist [3] | Priority Tax Claims | Each Allowed Priority Tax Claim, to the extent not previously paid, shall be paid in Cash in full on the later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim. |
| **Class 1**– $28,369.14[4] | NYC Secured Claims | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, holders of Allowed Other Secured Claims shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of the Allowed Other Secured Claims (calculated through the Effective Date) on the Effective Date in accordance with section 1124(1) of the Bankruptcy Code. |
| **Class 2**– Approximately $31,000.00[5] | NYCTL Secured Claims | Unimpaired. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, holders of Allowed Other Secured Claims shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of the Allowed Other Secured Claims (calculated through the Effective Date) on the Effective Date in accordance with section 1124(1) of the Bankruptcy Code. |
| | | |

---

[3] The Debtor reserves all of its rights to object to Priority Tax Claims

[4] The Debtor reserves all of its rights to object to any of the NYC Secured Claims.

[5] The Debtor reserves all of its rights to object to any of the NYCTL Secured Claims.

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| Class 2– $18,000[6] | General Unsecured Claims | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Class 2 General Unsecured Claim shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of their Allowed General Unsecured Claims, along with interest at the market rate, or as may be otherwise agreed in writing between the Debtor and the holder of such Claim, on the later of: (i) ten (10) days after the Effective Date or (ii) three business days after such Claim becomes an Allowed Claim, not to exceed payment in full, plus interest at the legal rate. |
| Class 3 | Interests | **Unimpaired.** The holder of the Class 4 Interests in the Debtor shall retain such Interests and will not receive any distribution but will retain his interests in the Debtor. |

## C.    CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan to be held before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge on            , 2024.

All hearings before Judge Stong will be conducted by telephone, video or in person, as the Court deems appropriate. For remote hearings, whether telephonic or video, it is not necessary to contact the Courtroom Deputy to request prior authorization to appear remotely. Whether the hearing is in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

---

[6] The Debtor reserves all of its rights to object to any of General Unsecured Claims

The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before      , 2024, at      a.m. Prevailing Eastern Time in the manner described under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied with regard to the Plan, in which event the Bankruptcy Court may enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. In the event that any unimpaired Class of Claims does not accept the Plan, Confirmation of the Plan may be sought pursuant to Section 1129(b) of the Bankruptcy Code. **The Debtor believes that the Plan satisfies all applicable requirements of Section 1129(a) and Section 1129(b) of the Bankruptcy Code.** See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements. Confirmation makes the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they have accepted the Plan.

### D.    VOTING INSTRUCTIONS – SUMMARY

**NOT APPLICABLE**

### E.    NOTICE TO HOLDERS OF CLAIMS

This Disclosure Statement and the accompanying ballots are being furnished to the Debtor's known Creditors pursuant to Section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Plan. The Plan is incorporated herein by reference.

The purpose of this Disclosure Statement is to enable you, as a Creditor whose Claim is in a Class impaired under the Plan to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

**THIS DISCLOSURE STATEMENT IS NOT A SOLICITATION FOR CAPITAL CONTRIBUTIONS TO THE DEBTOR FROM ANY ENTITY.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE**

**ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared by the Debtor to the best of his knowledge and belief and based upon information available to the Debtor such as filings made with the Bankruptcy Court and other courts and the Debtor does not vouch for its accuracy. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.

In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."

No statements or information concerning the Debtor or his properties, future business operations, results of operations or financial condition, are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors to make an informed decision about the Plan. Each holder of a Claim should review this Disclosure Statement and all exhibits hereto (including the Plan) before casting a ballot. Holders of Claims are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or his business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or his businesses or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## II. RECOMMENDATION

In opinion of the Debtor, the treatment of Creditors under the Plan provides a greater possible recovery than is likely to be achieved under any other alternatives including liquidation under Chapter 7 of the Bankruptcy Code. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in Chapter 7 liquidation, Administrative Expenses may not be paid and other than to the secured creditors, no creditor would receive any distributions on account of its Allowed Claim.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND URGES EACH CREDITOR ENTITLED TO VOTE TO ACCEPT THE PLAN.**

## III. SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, which is incorporated herein by reference.

### A. CLASSIFICATION OF CLAIMS

Article 3 of the Plan classifies the various Claims against the Debtor into the following six (6) classes of Claims:

**Class 1** - Class 1 consists of NYC Secured Claims. The New York City Water Board filed a proof of claim in the amount of $28,369.14. The Debtor is not aware of any other holders of NYC Secured Claims.

**Class 2**- Class 2 consists of NYCTL Secured Claims. The approximate amount of NYCTL Secured Claims is $31,000.

**Class 3** - Class 3 consists of all Allowed Claims against the Debtor, not including statutory fees, administrative claims, Priority Tax Claims, or Secured Claims. The Debtor is not aware of any holders of General Unsecured Claims. The approximate amount of General Unsecured Claims is $18,000.

**Class 3**- Class 4 consists of Michael McMahon, the member of the Debtor.

As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, Statutory Fees, Administrative Claims and Priority Tax Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

### B. TREATMENT OF CLAIMS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of impaired and unimpaired Claims classified in Article 3 of the Plan as follows:

**Class 1- NYC Secured Claims**.  Subject to the provisions of Article 8 of the Plan with

respect to Disputed Claims, holders of Allowed Other Secured Claims shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of the Allowed Other Secured Claims (calculated through the Effective Date) on the Effective Date in accordance with section 1124(1) of the Bankruptcy Code.

**Class 2- NYCTL Secured Claims**.  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, holders of Allowed Other Secured Claims shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of the Allowed Other Secured Claims (calculated through the Effective Date) on the Effective Date in accordance with section 1124(1) of the Bankruptcy Code.

**Class 3 – General Unsecured Claims.**  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash distribution from the Creditors' Fund equal to the full Allowed amount of their Allowed General Unsecured Claims, along with interest at the market rate, or as may be otherwise agreed in writing between the Debtor and the holder of such Claim, on the later of: (i) ten (10) days after the Effective Date or (ii) three business days after such Claim becomes an Allowed Claim, not to exceed payment in full, plus interest at the legal rate.

**Class 4 – Interests.**  The holder of the Class 4 Interests in the Debtor shall retain such Interests and will not receive any distribution but will retain his interests in the Debtor.

### C. TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(l) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Statutory Fees.** The Debtor has a statutory duty to pay all outstanding amounts that may be due to the United States Trustee upon Confirmation, together with any fees due pursuant to 28 U.S.C. §1930(a)(6) through the date of the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case.  As of the date hereof, the Debtor is current with regard to his obligations to the United States Trustee. Statutory Fees that are due on or prior to the Effective Date of the Plan shall be paid in Cash on the Effective Date or as soon thereafter as reasonably practicable.  Statutory Fees that may become due after the Effective Date shall be paid as they become due by the Debtor until the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case.

**Administrative Claims.** Administrative Claims are defined as the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Allowed Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section

330 of the Bankruptcy Code, and tax claims, common charges and other charges and fees for the period from the Petition Date through the Effective Date of the Plan.

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the date payment of such Claim is due under the terms thereof or applicable law, or (y) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise agreed in writing by the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of his business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

**Professionals' Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained in a case under the Bankruptcy Code. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than thirty (30) days following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, and counsel to the Debtor in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court.

The holders of administrative claims, on account of professional fees are Shafferman & Feldman LLP, in the amount of approximately $25,000.00.

**Priority Tax Claims.** Generally, Priority Tax Claims are (subject to certain timing and date of assessment limitations) unsecured claims of "governmental units" (as defined in the Bankruptcy Code) based upon: (a) taxes measured by income or gross receipts; (b) property taxes; (c) withholding taxes; (d) employment taxes; (e) excise taxes; (f) customs duties; and (g) penalties based on actual pecuniary losses relating to the foregoing.  These Priority Tax Claims include, among others, all taxes measured by income or gross receipts attributable to the three-year period immediately preceding the Petition Date (*i.e.*, from  September 20, 2016 through the Petition Date).

There are no known priority tax claims.

In full satisfaction, release and discharge, the holders of Allowed Priority Tax Claims shall be paid in Cash in full on the later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim.


**D.    DISPUTED CLAIMS**

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor or his estate by any Entity.

**Time to Object**.  Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve an objection to any Claim, other than a Claim that has already been allowed by an order of the Bankruptcy Court or pursuant to this Plan, on the later to occur of (i) 60 days following the Effective Date or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

1.      **Prosecution of Objections.** After the Effective Date, only the Debtor shall have authority to settle, compromise, withdraw or resolve objections to Claims. If any claim is disputed 150% of the amount owed per the filed Proof of Claim shall be held and that in the event the disputed claim is found to be allowed as filed, the full amount owed plus interest and other charges that have accumulated shall be disbursed on the allowed claim, as opposed to payment as of the real estate closing date.

**Disallowance.**  Except as provided in Section 6.1 of the Plan, any Disputed Claim for which no proof of claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

## E.      DISTRIBUTIONS UNDER THE PLAN

Article 8 contains provisions governing the making of distributions on account of Claims. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made three business days after such Claim becomes an Allowed Claim.  All Cash payments to be made by the Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** The Debtor's counsel shall be the Disbursing Agent to make distributions under the Plan. Pursuant to the terms of the Plan, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

Distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. The Disbursing Agent shall not be required to attempt to locate any holder of an Allowed Claim.

## F.      UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan that is unclaimed shall be reallocated to those Creditors with Allowed Claims in the same class of Creditor whom such distribution was initially made. Such reallocation shall be made after the expiration of (i) three months after the Effective Date and such funds remain unclaimed or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

## G.    DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no distribution under the Plan will be made to the holder of such Claim. There will be set aside and reserved on behalf of such Disputed Claim, however, such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such distribution. On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax; (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code; (iv) Secured Claims; and (v) General Unsecured Claims. The Disbursing Agent may also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

Within three (3) business days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or property, including any interest, dividends or proceeds thereof, to which a holder is then entitled, if any, with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## H.    COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting

requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

## I.    EFFECTIVE DATE

The Effective Date of the Plan is defined to mean the later of the first day after the Confirmation Order becomes a final, non-appealable order or any stay of the Confirmation Order no longer remains in effect.

## J.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts, to the extent not previously rejected or assumed or designated to be assumed and assigned pursuant to the Plan, shall be deemed rejected as of the Effective Date.  Any claim for damages arising from such rejection shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the Effective Date.

## K.    IMPLEMENTATION OF THE PLAN

**Implementation.** The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

**Funding.**  Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from Creditors' Fund which contain the proceeds generated from the capital contribution to be made by Michael McMahon, the Debtor's member.

**Execution of Documents.** On or after the Effective Date, the Debtor shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan.  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**Filing of Documents.** Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

### M.    RESERVATION OF RIGHTS OF ACTION

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and in accordance with his determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under Sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, including, but not limited to, any cause of action asserted, or which may hereafter be asserted. Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, shall be used to satisfy Allowed Claims under the terms of the Plan. The Debtor is not aware of any such claims.

### N.    MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and the contents of a plan. Prior to Confirmation, if a proponent files modifications to a plan, pursuant to Section 1127(a) "the plan as modified becomes the plan." In other words, if a modification materially alters the treatment of any Creditor that has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

### O.    RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

### P.    RISK FACTORS

The Debtor believes that the confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor.

## IV. VOTING INSTRUCTIONS

A Creditor who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement. See "VOTING INSTRUCTIONS -- Who May Vote." The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

### A.    DEADLINE FOR RECEIPT OF BALLOTS

The solicitation period for votes accepting or rejecting the Plan will expire at 4:00 p.m., Prevailing Eastern Time, on    , **2024** (the "Voting Deadline"). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

### B.    BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by    **, 2024 at 4:00 p.m.,** the Voting Deadline, to:

> Shafferman & Feldman LLP
> 137 Fifth Avenue, 9th Floor
> New York, New York 10010
> Attn: Joel M. Shafferman, Esq.

(the "Balloting Agent"). A Creditor entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Joel M. Shafferman, Esq., at (212) 509-1802.

### C.    WHO MAY VOTE - IN GENERAL

Claims in Class 1, Class 2, Class 3*,* and Class 4 the interest holders, are unimpaired, and therefore, not entitled to vote.

**Ballots Executed in a Representative or Fiduciary Capacity.** Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who

holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

### D.    PENDING OBJECTIONS

No Ballot cast with respect to any Claim which is the subject of a pending objection will be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise.

### E.    DEFECTS OR IRREGULARITIES

**ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE NEITHER AN ACCEPTANCE NOR A REJECTION OF THE PLAN AND SHALL BE DEEMED NOT TO HAVE BEEN CAST.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

### F.    REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Creditor who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim represented by such Claim, (ii) be signed by the Creditor as the case may be, in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## V. ACCEPTANCE AND CONFIRMATION

### A.    CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to be held on , 2024 at     m. before the Honorable before the Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York.

All hearings before Judge Stong will be conducted by telephone, video or in person, as the Court deems appropriate. For remote hearings, whether telephonic or video, it is not necessary to contact the Courtroom Deputy to request prior authorization to appear remotely. Whether the hearing is in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served so as to be received on or before      , 2024 at 4:00 p.m. Prevailing Eastern Time by: (i) Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq. and (ii) Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Jeremy Sussman, Esq.

### B.    REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various requirements of the Bankruptcy Code, (iii) the Plan has been proposed in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all

17

payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

To determine what the holders in each Impaired Class of Claims would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Property in a Chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against the Debtor would consist of the proceeds resulting from the disposition of the Property. Such amount would be reduced by the amount of any Claim or Claims secured by the Property, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation of the Property. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

After consideration of the effects that a Chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a Chapter 7 liquidation arising from fees payable to the attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation, (ii) the erosion in value of the Debtor's properties in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the potential increase in Claims which would be satisfied on a priority basis or on a parity with the Claims of general Unsecured Creditors, the Debtor believes that holders of Claims in impaired Classes would be unlikely to receive any distribution on account of their Claims except under the Plan.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor a recovery with a present value greater than the present value of the distribution which such Creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Although a liquidation analysis estimating distributions under a hypothetical liquidation of a debtor's properties is commonly submitted in support of a proposed plan, here where the Debtor's properties are to be sold under a Plan and the proceeds distributed in accordance with the priority scheme established under the Bankruptcy Code and applicable non-bankruptcy law, the actual liquidation value will be established, and a hypothetical analysis will serve little purpose.

Because the Plan will be implemented by the distribution of the Creditors' Fund which will be sufficient in amount to all creditors in full, the best interests test is not an issue.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. Because the Plan will be implemented by the distribution of the Creditors' Fund which will be sufficient in amount to all creditors in full, feasibility is not an issue.

## VI. EFFECT OF CONFIRMATION

### A.    INJUNCTION

Except (i) as otherwise provided in the Plan (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor's Property sold under the Plan, or (b) the creation, perfection or enforcement of any lien or encumbrance against the Property sold under the Plan with respect to any Claim discharged under the Plan.

### B.    RELEASES AND DISCHARGE

**Discharge.**   (a) Except as otherwise provided in the Plan, on the Effective Date, and notwithstanding any provision of the Bankruptcy Code to the contrary, the Debtor shall be deemed to be discharged pursuant to section 1141 of the Bankruptcy Code from all Claims against and Interests in the Debtor that arose prior to the Effective Date and from any liability of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether (i) a Proof of Claim has been filed or deemed to have been filed with respect to such Claim, (ii) such Claim or Interest is allowed or disallowed, or (iii) the holder of such Claim has accepted the Plan.

(b)    Except as otherwise provided in the Plan, all Entities shall be precluded and

19

enjoined from asserting against the Debtor, and its respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(c)    Except as otherwise provided under the Plan or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan and section 1141(d)(1) of the Bankruptcy Code, shall be null and void and of no force and effect, regardless of whether a Proof of Claim or Proof of Interest therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims against the Debtor, or holders of Interests in the Debtor shall be precluded from asserting against the Debtor, and any of its assets or properties, or any property distributed under the Plan, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, and the entry of the Confirmation Order shall permanently enjoin all Creditors and holders of Interests, their successors and assigns, from enforcing or seeking to enforce any such Claims or Interests.

**Injunction.**  (a) Except (i) as otherwise provided in the Plan (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtors' obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, or from its property, (ii) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtor or any property distributed under the Plan, or (iii) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code.

(b)    Except as otherwise provided in the Plan or the Confirmation Order, the entry of the Confirmation Order, shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties any obligation or debt except pursuant to the terms of the Plan.

**Limitation of Liability.**  Neither the Debtor, nor any of its Interest Holders, nor any of its members,  officers, or directors, nor any of their agents or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, or any other action taken or omitted to be taken in connection with the Case or the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence.

**Released Entities.  Except as expressly provided for in the Plan, upon the Effective Date, in consideration** of the Cash and other property to be distributed to or on behalf of the

holders of Claims under the Plan, the Plan shall be deemed to have resolved all disputes and constitute a settlement and release of the Released Entities, effective as of the Effective Date, between and among each of the Released Entities inter se, by the Debtor, on its own behalf and on behalf of all Interest Holders and Creditors, and by each Creditor and Interest Holder, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Released Entities, Creditors or Interest Holders ever had, now have or hereafter may have (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan);

**Plan and Confirmation Order as Release**.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of the Plan.

## VII. ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the promulgation and confirmation of an alternative plan of reorganization.

As discussed at length above, the Debtor believes that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a Chapter 7 liquidation.

## VIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed General Unsecured Claim. Each holder of an Allowed General Unsecured Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an General Unsecured Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed General Unsecured Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

Each Holder of Class 3 General Unsecured Claims will recognize gain or loss upon the receipt of such pro-rata share equal to the difference, if any, between the "amount realized" by such Holder and the Holder's adjusted basis in his, her or its Allowed

Unsecured Claim. Any gain or loss realized by a Holder should constitute ordinary income or loss to her unless the General Unsecured Claim is a capital asset. If a General Unsecured Claim is a capital asset, and it has been held for more than one year, such Holder will realize a long term capital gain or loss.

The tax consequences to Holders will differ and will depend on factors specific to each Holder, including but not limited to: (i) whether the Holder's General Unsecured Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Unsecured Claim; (iv) whether the Holder is a United States person or foreign person for tax purposes; (iv) whether the Holder reports income on the accrual or cash basis method; or (v) whether the Holder has taken a bad debt deduction or otherwise recognized loss with respect to a General Unsecured Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## IX. ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq., (212) 509-1802.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, at the United States Bankruptcy Court, Eastern District of New York, One Bowling Green, New York 10004-1408 and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:30 p.m. Additionally, copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case may be viewed and printed over the Internet from the Bankruptcy Court's

Electronic Case Filing system at http://www.nyeb.uscourts.gov.

## XII. CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and strongly encourages all holders of Claims against the Debtor to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received not later than 4:00 p.m. Prevailing Eastern Time on _____, 2024.

Dated: Rockaway Park New York
   December 19, 2023

      Respectfully submitted:


     By:/S/ Michael McMahon_____
      Michael McMahon,
      Member of the Debtor

Dated: New York, New York
   December 19, 2023

      **SHAFFERMAN & FELDMAN LLP**
      Counsel to the Debtor

     By:  _/S/ Joel M. Shafferman_____
      Joel M. Shafferman, Esq.
      137 Fifth Avenue, 9th Floor
      New York, New York 10010
      (212) 509-1802